# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MR. JJ, LLC d/b/a Veteran Payment Systems, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CLEARENT, LLC., ) <br> ) <br> Defendant. ) | Case No. 4:22-cv-00510-SEP |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint, Doc. [34]. For the reasons set forth below, the motion is granted.

### FACTS AND BACKGROUND[1]

This case is a contract dispute between companies that provide credit and debit card processing services to merchants. Doc. [22] ¶¶ 13, 14. Plaintiff Mr. JJ, LLC d/b/a Veteran Payment Systems (Veteran) seeks damages and a declaratory judgment against Defendant, Clearent, LLC.

On April 21, 2011, Veteran and Clearent entered into an Independent Sales Organization Agreement (ISO Agreement), pursuant to which Veteran would solicit and refer merchants to Clearent, and in turn, Clearent would pay Veteran residuals for those merchants processing under Veteran's platform. *Id*. ¶¶ 15-18. Section 3.8 of the ISO Agreement contains a non-solicitation provision prohibiting Clearent from hiring any Veteran employees or sales agents without Veteran's written consent. *Id*. ¶ 19. First Security Bank (FSB) and two of its staff members, Robert Wood and Thomas Carter, were among Veteran's sales agents and referral partners, and over the course of an approximately five-year relationship, FSB referred at least 708 merchant accounts to Veteran. *Id*. ¶¶ 20, 21. Clearent knew that FSB, Wood, and Carter were Veteran referral partners and sales agents, and Clearent acknowledged that they were covered by Section 3.8 of the ISO Agreement. *Id*. ¶¶ 22-24, 27.

In November 2020, FSB and Clearent approached Veteran about their desire to establish a direct contractual relationship with one another, thus bypassing Veteran as the middleman,

---

[1] For purposes of the instant motion, the Court takes the factual allegations in the Complaint, Doc. [22], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

which would have been prohibited under Section 3.8 of the ISO without Veteran's consent. *Id*. ¶ 30. Veteran was initially reluctant to provide consent because it was concerned that FSB and Clearent would move merchants that had been processing with Clearent on Veteran's platform onto the new Clearent-FSB platform. *Id*. ¶ 33. In order to convince Veteran to consent to the direct Clearent-FSB contractual relationship, Clearent, through its Strategic Partnership Manager, Rich Cleaver, promised Veteran that Clearent would include a Non-Solicitation Provision that would prohibit Veteran merchants processing with Clearent from being moved to the new Clearent-FSB portfolio, and also promised that Clearent would enforce the provision. *Id*. ¶ 40. Cleaver conveyed these assurances to Veteran on more than one occasion, by both telephone and e-mail communications, and represented that the FSB non-solicitation provision would be in effect for at least five years. *Id*. ¶¶ 41-44. Because of the representations by Cleaver and Clearent that the FSB non-solicitation would be in place and enforced by Clearent, Veteran consented to the relationship between Clearent and FSB, and Clearent and FSB entered into a direct agreement. *Id*. ¶¶ 45, 46.

By July 2021, Veteran learned that several Veteran merchants had been moved from its Clearent portfolio to the FSB-Clearent portfolio. *Id*. ¶ 47. In August 2021, Veteran contacted Clearent to protest the moves, but was informed by Clearent employee Mark Passifione that no accounts had been transferred from Veteran to FSB. *Id*. ¶ 48. In November 2021, Veteran reached out yet again to Clearent, at which time Passifione confirmed that several Veteran accounts had moved to FSB's portfolio and represented that Clearent would transfer the merchants back to Veteran. *Id*. ¶ 49. During the conversation, Passifione confirmed that the FSB non-solicitation provision was in effect and that it covered Veteran's merchants. *Id*. ¶ 50. Clearent proceeded to move only one merchant back to Veteran's platform. *Id*. ¶ 52. By December 2021, even more Veteran merchants had been moved to the FSB portfolio, and Veteran contacted Clearent yet again, demanding that it enforce the FSB non-solicitation provision, but Clearent did nothing. *Id*. ¶¶ 53, 54. It was at that time that Passifione informed Veteran that Clearent had no mechanism for monitoring Veteran's merchants or preventing them from being moved to the FSB platform, and so Clearent was incapable of enforcing compliance with the non-solicitation provision. *Id*.

The loss of merchants from its platform was problematic for Veteran because in October 2020, it sold part of its Clearent residual stream to another company, Clarus, and pursuant to its

agreement with Clarus, Veteran stood to forfeit a significant earnout of approximately $550,000 if its residuals fell below a certain volume threshold. *Id*. ¶¶ 34, 37, 103-104. Veteran also sold some of its Clearent residual stream to another third party, Cutter, and pursuant to their agreement, Cutter would retain a fixed amount of monthly residuals, and Veteran would receive any excess residuals above that fixed amount. *Id*. ¶ 38. Because Clearent allowed so many merchants to be removed from Veteran's platform, Veteran lost significant residual payments to which it would have been entitled pursuant to its contract with Cutter. *Id*. ¶ 39.

Veteran's First Amended Complaint asserts four causes of action against Clearent: (1) breach of contract related to the ISO Agreement; (2) breach of contract related to the FSB non-solicitation provision; (3) common law claim for fraud, misrepresentation, and fraudulent inducement; and (4) declaratory judgment. Clearent moved to dismiss the First Amended Complaint, Doc. [26], after which Veteran moved to file a Second Amended Complaint (SAC). Doc. [34]. The proposed SAC contains the same claims but with additional factual allegations, as well as updates to its damage allegations because, as Veteran expected, Clarus has refused to pay the $550,000 earnout. *See* Doc. [34-1].

## LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure states that courts "should freely give leave [to amend] when justice so requires." Under Rule 15, "[d]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008).

## DISCUSSION

Of the several available grounds for opposition to amendment, Defendant argues only one: futility. "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Hillesheim*, 897 F.3d at 955 (quoting *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). In other words, "[a]lthough ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal

conclusion that the amended complaint could not withstand a Rule 12 motion." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) (citing Fed. R. Civ. P. 12).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure—which, as noted, guides the Court's futility analysis—a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give "a short and plain statement showing that the pleader is entitled to relief . . . ." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

Defendant argues that Plaintiff's proposed amendments would be futile because (1) the FAC insufficiently pled standing and Plaintiff may not remedy that deficiency after-the-fact, and (2) the proposed SAC, like the FAC, fails to state any plausible claims for relief and would be subject to dismissal. After careful consideration of Defendant's arguments, the Court finds no basis for finding Plaintiff's proposed amendments futile.

**I.      Plaintiff has sufficiently pled injury for purposes of establishing standing.**

Defendant argues that the FAC did not sufficiently allege injury for the purpose of establishing Article III standing, and that Plaintiff may not remedy that deficiency by amendment; thus, any amendment would be futile. More specifically, Defendant argues that Plaintiff "alleged in its first amended complaint that at the time [Plaintiff] filed this lawsuit, it was merely 'at risk' of losing money," and such risk is "not sufficient to allege a 'concrete harm' giving rise to Article III standing for either Veteran's damages claims or its requests for declaratory relief." Doc. [36] at 4.

Plaintiff does not dispute that it must have established standing in the FAC in order to survive Defendant's challenge to the proposed amendments, but it maintains that the FAC did adequately plead standing. In particular, Plaintiff points to allegations in the FAC that it already lost residual payments as a result of Defendant's conduct, *see* Doc. [22] ¶¶ 70, 82, 92, 93, and that it was at risk of imminent additional loss, *see id.* ¶¶ 34-37, 102-04. *See* Doc. [39] at 5-9.

Plaintiff did plead that it had already lost residual payments as a result of (a) Clearent's alleged breach of the ISO Agreement (Count I), Doc. [22] ¶ 70; (b) Clearent's alleged breach of FSB Non-Solicitation Provision (Count II), *id.* ¶ 82; and Clearent's alleged fraudulent

4

inducement of Veteran's consent to the relationship between Clearent and FSB, *id.* ¶ 92. Therefore, Defendant's standing challenge to Counts I through III of the FAC misses the mark. The only standing issue is whether Plaintiff's allegations of likely imminent loss were sufficient to confer standing to bring Count IV, in which Plaintiff sought a declaration stating, among other things, that Defendant would be liable for certain losses anticipated by Plaintiff pursuant to the its agreement with Clarus.  *See* Doc. [22] at 16.

Unfortunately, neither party cites a case in which standing based on the threat of injury is evaluated in any context that remotely resembles this case.  Instead, they invite the Court to rely on legal principles selectively excerpted from decisions that apply those principles in contexts that are very different from the instant matter.  *See* Docs. [27] at 5-6, [36] at 4-5, [33] at 2-4 (relying exclusively on *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021), for the proposition that allegations of risk are insufficient to support standing); Doc. [30] at 7-8 (relying exclusively on *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000), in response).

On its own review of the case law, the Court notes that the Eighth Circuit appears not to have adopted Defendant's rigid interpretation of *TransUnion LLC v. Ramirez* as barring *any* claim seeking damages based on the threat of future harm.  *See* Doc. [33] at 4.  Rather, the Eighth Circuit has recently reiterated that:

> [c]laims of future harm may be sufficient to establish Article III standing if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Dep't of Com. v. New York*, 139 S.Ct. 2551, 2565 (2019) (citation omitted).  Put differently, "[a] plaintiff must show that he 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and that the injury or threat of injury must be both real and immediate.'" *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) (alteration in original) (citation omitted).  "'[A]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted).

*McNaught v. Nolen*, 76 F.4th 764, 770 (8th Cir. 2023).  The threat of injury alleged by Plaintiff here is at least as "real and immediate" as the future harm involved in the case relied on by the Eighth Circuit for the proposition that a claim of future harm *may* be sufficient.  *See Dep't of Com.*, 139 S.Ct. at 2566 (finding standing for States to challenge the decision of the Secretary of Commerce to reinstate in the census a question concerning citizenship status, where, if noncitizen households were undercounted by as little as 2% the States could lose federal funds that are distributed on basis of population).  And the threat of injury alleged by Plaintiff here is

much more "real and immediate" than the cases the Eighth Circuit cited in which the plaintiffs were found not to have standing based on allegations of future harm. *See Smith*, 987 F.3d at 1209 (finding uncertain intention to some day return to an establishment insufficient to confer standing); *Clapper*, 568 U.S. at 414 (finding a "speculative chain of possibilities" insufficient to establish "certainly impending" injury). And again, Defendant has not produced a single case in which allegations that are in any way similar to Plaintiffs were found insufficiently "real" or "immediate" to support standing on a motion to dismiss.

As this case is at the pleading phase, it is sufficient for standing for this Court to find that Plaintiff "may [be] able to show at trial that the string of occurrences alleged would happen immediately." *Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990). The First Amended Complaint meets that standard, and therefore the fact that some of its allegations are of imminent future harms do not undermine Plaintiff's standing. As a result, Defendant's related argument against Plaintiff's motion for leave to file the Second Amended Complaint fails. Plaintiff did not lack standing at the time of filing the First Amended Complaint; therefore, the proposed amendments are not futile on that basis.

**II.     Plaintiff states plausible claims in all Counts of the SAC.**

**A. Plaintiff's contract-based claims in Counts I, II, and IV are not futile.**

Defendant argues that Plaintiff's amended claims based on the ISO Agreement and the FSB non-solicitation clause would fail in response to a Rule 12(b)(6) motion. Defendant makes several arguments as to why the claims are not viable, including, among other things, that Plaintiff does not provide sufficient details or evidence to support its allegations, that the contracts at issue should not be interpreted in the manner alleged by Plaintiff, and that Plaintiff fails to show a causal nexus between its damages and Clearent's conduct. The common fault in Defendant's arguments is that they are premature. At this stage of the proceedings, the Court's focus is on whether Plaintiff has sufficiently pled its claims, yet Defendant is asking the Court to resolve factual disputes and contractual ambiguities that go to whether Plaintiff will ultimately prevail on its claims. *See LifeScience Techs., LLC v. Mercy Health*, 632 F. Supp. 3d 949, 956 (E.D. Mo. 2022) ("Whether Plaintiff will ultimately prevail based on the contract provisions at issue . . . is a fact not suitable for the Court to decide" at this stage.); *Schwan's Co. v. Cai,* 2021 WL 5745791, at *9 (D. Minn. Dec. 2, 2021) ("Resolving a factual determination" is not done at the motion to dismiss stage.); *see also White Knight Diner, LLC v. Owners Ins. Co. Inc.*, 2020

6

WL 1445724, at *8 (E.D. Mo. Mar. 25, 2020) ("[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). The parties offer two entirely different interpretations of the contracts at issue. And Defendant even appears to concede that there is more than one "equally plausible" interpretation of Plaintiff's allegations regarding the ISO Agreement. *See* Doc. [36] at 16. It may ultimately be the case that, after the parties have had the opportunity to conduct discovery, Plaintiff will be unable to establish all that is necessary to carry its claims, but the Court does not find that it would be futile to allow Plaintiff to pursue its claims at this time.

### B. Plaintiff's fraud claim in Count III is not futile.

Defendant, in its memorandum in opposition to Plaintiff's motion to amend, does not offer any argument about Plaintiff's fraud claim in Count III other than to say that the claim fails for the "reasons Clearent has already identified," citing vaguely to "Mem. at 10-14." Doc. [36] at 14-15. The Court assumes that Defendant intends to direct the Court's attention to Defendant's memorandum in support of its motion to dismiss the FAC, which is found at Doc. [27].[2] In that memorandum, Defendant argues that Plaintiff has failed to allege fraud with sufficient particularity. Doc. [27] at 18. Defendant again asks the Court to require more of Plaintiff than is required at the motion to dismiss phase.

The elements of an action for fraud under Missouri law are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 131-32 (Mo. 2010). A state law fraudulent misrepresentation claim must "comply with the heightened pleading standards of Rule 9(b), which require plaintiffs to plead 'the circumstances constituting fraud . . . with particularity.' Fed. R. Civ. P. 9(b)." *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir. 2007). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct

---

[2] Here is an excellent example of the importance of record citations—i.e., references to the document numbers assigned in the Court's electronic filing system—to the Court's review.

7

charged." *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted).

Clearent argues that Veteran has not pled the alleged fraud with the requisite specificity. Doc. [27] at 18. The Court disagrees. Veteran has pled that Clearent promised it would not allow merchants to be removed from Veteran's platform and placed on FSB's; that the promise was conveyed to Veteran by Clearent employees Rich Cleaver and Mark Passifione; that Clearent knew the representations were false when made; that the representations were material, as Veteran consented to the FSB-Clearent relationship in reliance on them; that Veteran did not know or have any reason to know the representations were false; and that it had a right to rely on the false representations and was damaged as a result. *See* Doc. [34-1] ¶¶ 102-11. The Court finds that Veteran has pled the elements of its fraud claim with sufficient specificity to avoid a finding of futility.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint, Doc. [34], is **GRANTED**. The Clerk of Court shall docket the Second Amended Complaint, Doc. [34-1], as the operative complaint in this matter.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss the Amended Complaint, Doc. [26], is **DENIED** as moot, without prejudice to refiling in response to the Second Amended Complaint. The parties should consult the Case Management Order for guidance on next steps in this matter. *See* Doc. [20].

Dated this 30th day of September, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

8